# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6666 | **DATE** | 1/12/2004 |
| **CASE TITLE** | UNITED STATES ex rel. ANDRES ELKEN-MONTOYA vs. BRILEY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The petition for a writ of *habeas corpus* [1-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JAN 14 2004 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 15 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 1/12/2004 | |
| | | date mailed notice | |
| CB | courtroom deputy's initials | PW mailing deputy initials | |

| | |
|---|---|
| UNITED STATES ex rel. ANDRES ELKEN-MONTOYA, | )<br>)<br>) No. 03 C 6666 |
| Petitioner, | )<br>) |
| | ) Suzanne B. Conlon, Judge |
| v. | )<br>) |
| KENNETH R. BRILEY, | )<br>) |
| Respondent. | )<br>) |

**DOCKETED**
JAN 1 4 2004

## MEMORANDUM OPINION AND ORDER

In 1996, Andres Elken-Montoya was caught transporting over 500 kilograms of cocaine. He was convicted in state court of controlled substances trafficking, unlawful possession of a controlled substance with intent to deliver, and unlawful possession of a controlled substance. He was initially sentenced to 110 years imprisonment and a $63,000,000.00 street value fine for the trafficking conviction. The Illinois Appellate Court affirmed Elken-Montoya's conviction, but remanded the case for a new sentencing hearing. *People v. Elken-Montoya*, No. 3-98-0166 (Ill. App. Ct. 2000). Elken-Montoya was sentenced to a term of 75 years. His petition for direct appeal to the Illinois Supreme Court was denied. *People v. Elken-Montoya*, No. 3-98-0166 (Ill. 2000). Elken-Montoya sought post-conviction relief, contending he was denied effective assistance of counsel. The trial court denied his petition. The Illinois Appellate Court affirmed. *People v. Elken-Montoya*, No. 3-00-0560 (Ill. App. Ct. 2002). Elken-Montoya's request for leave to appeal to the Illinois Supreme Court was denied. *People v. Elken-Montoya*, No. 93883 (Ill. 2002). Pursuant to 28 U.S.C. § 2254, Elken-Montoya petitions for a writ of *habeas corpus*.

1

/5

He contends his trial counsel's failure to preserve his rights under the Vienna Convention violated his sixth amendment right to effective assistance of counsel.

## BACKGROUND

Factual findings of a state trial or appellate court are presumed correct in a federal *habeas* proceeding unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Elken-Montoya does not challenge the factual findings of the Illinois Appellate Court. Accordingly, the court adopts the Illinois Appellate Court's statements of fact.

On November 6, 1995, Elken-Montoya, a Colombian citizen, was driving a rented motor home on Interstate 80 when he was stopped by Trooper Floyd Blanks for speeding and improper lane usage. Blanks asked Elken-Motoya for his driver's license. After Elken-Montoya produced his license, Blanks asked him for his vehicle registration and to come back to the squad car. Elken-Montoya complied, accompanying Blanks to the squad car with a copy of the motor home rental agreement. Inside the squad car, Blanks advised Elken-Montoya he was issuing him a warning for speeding and improper lane usage. While writing the warning, he asked Elken-Montoya why he was having difficulty staying in his lane. Elken-Montoya stated the wind may have given him problems. Blanks then asked Elken-Montoya where he was going. Elken-Montoya stated he was on his way from Florida to Chicago, visiting his girlfriend. Blanks also asked how many people were with Elken-Montoya in the motor home. Elken-Montoya responded he was accompanied by five passengers, including his girlfriend.

Blanks thought some of Elken-Montoya's responses were suspicious, so he called for a canine unit. Blanks asked Elken-Montoya for permission to search the motor home. Elken-Montoya looked surprised, so Blanks repeated his request. Elken-Montoya replied, "yeah."

Blanks then advised Elken-Montoya a canine unit was on its way. The canine unit arrived about 40 minutes after Blanks sent out the request. It had been delayed at another traffic stop. During the wait, two additional troopers arrived to assist Blanks. Elken-Montoya returned to the squad car to ask if there was a problem. Blanks explained the cause of the canine unit's delay, and Elken-Montoya returned to the motor home. When the canine unit arrived, Blanks informed Elken-Montoya and the motor home passengers that Elken-Montoya had consented to a search of the vehicle. He asked the passengers if they had a problem with the search. The passengers left the motor home without objection. Only Elken-Montoya spoke up: it was cold outside and he wanted to change from shorts to pants.

Within minutes, the canine officer emerged from the motor home announcing she had discovered cocaine. Blanks read Elken-Montoya his *Miranda* rights in English. Elken-Montoya said he understood his rights, and Blanks advised him an interpreter would come later to read the rights in Spanish. After the arrest, Blanks asked Elken-Montoya about completing a controlled delivery of the cocaine. Elken-Montoya smiled and said he would like to help, but then with his index finger, made a slashing gesture across his throat. According to Blanks, he communicated with Elken-Montoya exclusively in English. Although Elken-Montoya spoke with a heavy accent and omitted some articles when speaking, he answered Blanks appropriately and with a high level of comprehension. Other troopers testified about Elken-Montoya's comprehension of English, as did Elken-Montoya, his mother and his co-defendants. Each witness' testimony supported the conclusion Elken-Montoya understood some English. Elken-Montoya took English classes in Colombia and the United States. The troopers testified Elken-Montoya

understood English well; one trooper noted Elken-Montoya began responding to Blanks' questions before the interpreter finished restating them in Spanish.

## **DISCUSSION**

Under Article 36(b) of the Vienna Convention on Consular Relations, April 24, 1963 art. 36(b), 21 U.S.T. 77, citizens of foreign states are entitled to contact their consulate in the event of detention or arrest. *United States v. Felix-Felix*, 275 F.3d 627, 632 (7th Cir. 2001). Elken-Montoya was never advised of his right to contact the Colombian Consulate. *Elken-Montoya*, No. 3-00-0560 at 6-8. Elken-Montoya maintains his attorney's failure to preserve his rights under the Vienna Convention violated his sixth amendment right to effective assistance of counsel. On post-conviction appeal, the Illinois Appellate Court denied this claim, holding Elken-Montoya suffered no prejudice from his attorney's failure to protect this right. *Id.*

An attorney's performance is constitutionally defective if it falls below an objective standard of reasonableness and there is a reasonable probability "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 686-88, 104 S.Ct. 2052 (1984). In a *habeas* petition, Elken-Montoya has the additional burden of demonstrating the Illinois Appellate Court applied *Strickland* in an objectively unreasonable manner. 28 U.S.C. § 2254(d); *see also Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) (state court application of *Strickland* accorded deference under § 2254(d)(1)). Elken-Montoya contends his trial counsel was inadequate for two reasons: (1) counsel failed to raise or preserve the issue of the state's failure to advise him of his right to speak with the Colombian Consulate; and (2) counsel never informed him of his rights under the Vienna Convention.

Elken-Montoya's claim that his trial counsel was inadequate because he failed to pursue claims based on violations of the Vienna Convention lacks merit. As the Illinois Appellate Court concluded, Elken-Montoya suffered no prejudice from his attorney's failure to seek suppression of the search of the mobile home based on Blank's failure to apprise him of his rights under the Vienna Convention. *Elken-Montoya*, No. 3-00-0560, p. 6-8. Elken-Montoya received and understood *Miranda* warnings. *See United States v. Chaparro-Alcantara*, 37 F. Supp.2d 1122, 1126 (C.D.Ill. 1999) (*Miranda* warnings dispel prejudice). Moreover, the evidence obtained during the search of Elken-Montoya's mobile home would have been admitted even if trial counsel had raised the Vienna Convention violation issue. Blank's failure to inform Elken-Montoya of his right to contact the Colombian Consulate is clearly not a basis for excluding evidence. *Elken-Montoya*, No. 3-00-0560 (Ill. App. Ct. April 8, 2002); *United States ex rel. Madej v. Gilmore*, No. 98 C 1866, 2002 WL 370222, at *10 (N.D.Ill. March 8, 2002); *United States v. Lawal*, 231 F.3d 1045, 1048 (7th Cir. 2000) (exclusionary rule not an appropriate remedy for violation of Article 36 of the Vienna Convention). Nor was Elken-Montoya prejudiced by trial counsel's alleged failure to prosecute due process claims based on the state's violation of the Article 36(b) notification provision. Without some showing that the violation had a material effect on the outcome of the trial, a conviction may not be overturned because Article 36(b) was violated. *Breard v. Greene*, 523 U.S. 371, 377, 118 S.Ct. 1352, 1355 (1998), citing *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246 (1991). In light of these considerations, Elken-Montoya fails to show the Illinois Appellate Court's application of *Strickland* is objectively unreasonable.

Elken-Montoya also claims he was denied effective trial counsel because his attorney failed to instruct him of his right to contact the Colombian Consulate. However, Elken-Montoya suffered no prejudice from his attorney's failure to do so. Even if he were able to exercise his rights under the Vienna Convention, it is unlikely that assistance by the Colombian Consulate would have had a material effect on the outcome of the trial. Although Elken-Montoya generally alleges the presence of a "language and cultural barrier," he does not assert the Consulate's involvement was necessary to bridge the gap. Pet. at 5-D. Moreover, his bare-bones assertion does not establish prejudice. *See Taylor v. United States*, 287 F.3d 658, 660-61 (7th Cir. 2002) (specific facts required to obtain evidentiary hearing). Elken-Montoya fails to allege any facts suggesting this barrier compromised his defense. He does not claim an interpreter was necessary, or that the language and cultural differences between him and his attorneys prevented an effective defense. *Cf. United States v. Cervantes*, 1998 WL 719932, at *2-3 (N.D.Ill. July 7, 1998) (specific facts required to demonstrate language barrier led to ineffective assistance of counsel). Indeed, given that Elken-Montoya's comprehension of English was sufficient to establish he voluntarily consented to the search of his mobile home, it is unlikely his ability to communicate with counsel was significantly impaired. Furthermore, the evidence of Elken-Montoya's guilt was overwhelming. The Colombian Consulate could not petition to quash the search of the mobile home. Elken-Montoya's attorney was not ineffective for failing to advise his client of his right to contact a diplomatic official "who could do no more to protect [Elken-Montoya's] rights than counsel himself." *Alcantara v. United States*, Nos. 02 C 5991, 99 CR 1254, 2003 WL 102873, at *3 (S.D.N.Y. Jan. 10, 2003). Elken-Montoya has not established the

Illinois Appellate Court's denial of relief was an unreasonable application of established federal law. 28 U.S.C. 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-5, 120 S.Ct. 1495 (2000).

## CONCLUSION

Elken-Montoya has failed to show the Illinois Appellate Court's denial of post-conviction relief was an unreasonable application of federal law. Accordingly, the petition for a writ of *habeas corpus* is denied.

January 12, 2004　　　　　　　　　　　　　　　ENTER:

　　　　　　　　　　　　　　　　　　　　　　　*Suzanne B. Conlon*
　　　　　　　　　　　　　　　　　　　　　　　Suzanne B. Conlon
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge